# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01515-CMA-KLM

ROBERT E. GOODSON,

     Plaintiff,

v.

MEGAN J. BRENNAN, Postmaster General of the United States Postal Service,

     Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion for Summary Judgment**

**[#75]**[1] (the "Motion"), and Plaintiff's **Motion for Summary Judgment and Opposition to**

**Defendant's Motion for Summary Judgment** **[#83]** (the "Response").[2]  Plaintiff, who

proceeds in this matter as a pro se litigant,[3] filed a Response **[#83]**[4] in opposition to the

---

[1] "[#75]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2] Plaintiff in part titled the Response [#83] "Motion for Summary Judgment."  However, this document was filed on July 27, 2017, nearly two months after the dispositive motions deadline, which was set for June 1, 2017.  *Minute Entry* [#68].  Plaintiff did not seek an extension of the dispositive motions deadline.  Additionally, parties may not make motions within other filings.  D.C.COLO.LCivR 7.1(d) ("A motion shall be filed as a separate document.").  The Court therefore construes this filing as a Response to the Motion [#75], and respectfully **recommends** that Plaintiff's request for entry of summary judgment in his favor included within the Response [#83] be **denied**.

[3] The Court must construe the filings of a pro se litigant liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."

Motion, and Defendant filed a Reply [#84]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#75] has been referred to the undersigned for a recommendation. *See* [#79]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#75] be **GRANTED**.

## I. Summary of the Case

Plaintiff asserts claims under Title VII for employment discrimination based on his race (African American) and unlawful retaliation due to his participation in protected activity. *Am. Compl.* [#20] at 2. Plaintiff is a resident of Aurora, Colorado, and is a former employee of the United States Postal Service ("USPS"), where he worked at the Hoffman Heights postal station. *Id.* at 2. Defendant, who is the Postmaster General of USPS, is responsible for the overall administration of USPS' operations nationwide. *Id.* Plaintiff began his

---

*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4] Plaintiff attaches approximately 100 pages of exhibits to his Response [#83]. He asserts that these exhibits support his version of the case. However, he only occasionally cites to a specific exhibit when discussing the evidence which allegedly supports his opposition to the Motion [#75]. "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response, or reply shall include the specific page or statutory subsection to which reference is made." D.C.COLO.LCiv R. 7.1(e). The Court is not required to sort through the documents submitted by Plaintiff. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials"). The Court may, and has, considered other materials in the record. *See id.* However, the Court may not and has not done Plaintiff's job for him by researching every submitted document to find support for the statements made in his briefing.

employment with USPS in May of 1985. *Id.* Plaintiff alleges that he was discriminated and retaliated against by his white supervisors, Donna Flaherty ("Flaherty") and James Mayo ("Mayo"). *Am. Compl.* [#20] at 3.

The following summary construes the evidence in the light most favorable to Plaintiff, as the nonmovant. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). Following a physical altercation between Plaintiff and another employee, David Fowler ("Fowler"), on September 3, 2011, Plaintiff never returned to work. *Plaintiff's Interrogatory Responses* [#75-1] at 17; *Plaintiff's Depo.* [#75-2] at 113-14. Plaintiff was approved for Family and Medical Leave Act ("FMLA") leave from November 22, 2011, to July 22, 2012, not to exceed 480 hours. *FMLA Designation Notice from US DOL* [#83] at 74. Plaintiff alleges that he also used a large amount of extended sick and annual leave that he had accumulated over his long tenure with USPS. *Am. Compl.* [#20] at 8.

On October 30, 2012, management officials Bessie Jones ("Jones") and Linda Delancy ("Delancy"), issued a Notice of Removal proposing to terminate Plaintiff's employment with USPS because he had been classified as Away Without Leave ("AWOL"). *Plaintiff's EEO Investigative Affidavit* [#75-1] at 63. A union grievance was filed, and Plaintiff's termination was reduced to a seven-day suspension as a result of a pre-arbitration settlement reached on April 2, 2013. *See Pre-Arb. Settlement* [#75-2] at 26. Plaintiff did not return to work and a second Notice of Removal was issued on August 22, 2013. *August 22, 2013 Notice of Removal* [#75-2] at 33.

Plaintiff asserts the following specific allegations in support of his Title VII claims:[5]

*Allegation 1*: Soliciting a supervisor to make a false statement against Plaintiff in order to subject him to discipline. Plaintiff alleges that his former supervisor, Ms. Flaherty, either encouraged Mr. Mayo to write a false statement – or knowingly accepted Mr. Mayo's false statement – that Plaintiff encouraged other African American mail carriers to disregard instructions Ms. Flaherty gave regarding the requirement to call-in if they were going to be on their route past 6:00 p.m. *EEO Form* [#75-1] at 34. Mr. Mayo's alleged false statement is in a handwritten note that Plaintiff alleges was wadded up, thrown away, and retrieved from the trash by another Postal employee. *Note* [#75-2] at 9; *Plaintiff's Depo.* [#75-2] at 99-100.

*Allegation 2*: Giving Plaintiff improper and conflicting instructions to cause him to later be subjected to discipline for failure to follow instructions. Specifically, Plaintiff alleges that on September 16, 2010, Ms. Flaherty improperly instructed him to (1) "not complete MBU box maintenance," (2) take a short-cut across the lawn of a residence, which was unsafe, (3) "pike" his mail as he was crossing the street, and (4) mark up mail in the office, contrary to instructions he and the other carriers had been given at a meeting. *EEO Form* [#75-1] at 36.

_____

[5] The following allegations were provided by Plaintiff in his response to interrogatories requesting him to state "each material act or omission" that he believes constitute unlawful discrimination and retaliation. *Defendant's Interrogatories* [#75-1] at 4; *Plaintiff's Responses* [#75-1] at 13-18. While these allegations differ slightly from the allegations provided in the Second Amended Complaint [#20], Plaintiff apparently does not dispute Defendant's characterization of these nine allegations because he states that he "does not dispute the facts set forth by the defendants." Plaintiff wishes to assert "additional facts, undisputable, which the defendants fail to note." *Response* [#83] at 3. However, the additional "facts" provided are not supported by any citations to the record. Accordingly, the Court does not consider them. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . .").

*Allegation 3*: Engaging in improper observations of Plaintiff while he performed his job duties on his assigned mail routes contrary to the provisions of the national labor agreement. Plaintiff alleges that on September 16, 2010, he was subject to being observed on his route improperly, which violated USPS policies. *EEO Form* [#75-1] at 38. The alleged improper conduct included that Plaintiff was observed in a covert manner, without the notice required for a route inspection, and that photographs were taken of Plaintiff's vehicle. *Id.* at 36, 38.

*Allegation 4*: Charging Plaintiff with failure to follow instructions. On October 15, 2010, Ms. Flaherty issued an Official Disciplinary Letter of Warning alleging that Plaintiff parked in a "No Parking/Fire Lane" on September 17, 2010, although he had been instructed not to park there on September 16, 2010. *Warning Letter* [#75-1] at 51-52. A union grievance was filed, after which the Dispute Resolution Team ordered that the Warning Letter be removed from Plaintiff's personnel file because the Team agreed that management had made errors in recreating or altering the documents that were the basis of the discipline. *Decision of Dispute Resolution Team* [#75-1] at 56.

*Allegation 5*: Encouraging Plaintiff's co-workers to engage in conflicts with him with respect to overtime. Plaintiff alleges that on November 4, 2010, Plaintiff overheard another mail carrier ask Ms. Flaherty for overtime on Route 11. *EEO Form* [#75-1] at 42. Ms. Flaherty responded that Route 11 was already assigned to Plaintiff and that the two mail carriers should "fight it out." *Id.*

*Allegation 6*: Hiding Plaintiff's mail scanner. Plaintiff alleges that on December 1, 2010, Mr. Mayo and Ms. Flaherty took and hid his mail scanner in order to negatively affect Plaintiff's job performance and threaten him with having to pay out of pocket for losing the

scanner.  *EEO Form* [#75-1] at 44.

*Allegation 7*:  Improperly processing two FMLA requests for leave, while properly processing the FMLA leave requests of two white letter carriers.  Plaintiff alleges that he needed to take FMLA leave due to his worsening blood pressure condition.  *Plaintiff's Interrogatory Responses* [#75-1] at 19.  He filled out the necessary parts of the forms and submitted them to Ms. Flaherty on February 11, 2011.  *Id.*  Ms. Flaherty refused to fill out the paperwork until she was ordered to do so on March 8, 2011, after Plaintiff complained to the union and USPS management.  *Id.* at 19-20.  Ms. Flaherty refused to follow instructions with regard to Plaintiff's next three written requests for FMLA as well.  *Id.* at 20.  Two white mail carriers requested FMLA leave, and their requests were properly processed by Ms. Flaherty.  *Id.*

*Allegation 8*: Improperly handling the September 2, 2011 incident in which there was a physical altercation between Plaintiff and Mr. Fowler, a white letter carrier.  Mr. Fowler punched Plaintiff in the back, and then Plaintiff lightly hit Mr. Fowler in the stomach to demonstrate how Mr. Fowler had hit him.  *Police Report* [#83-1] at 41-42.  Ms. Flaherty either called or ordered someone to call the Aurora Police Department.  *Plaintiff's Interrogatory Responses* [#75-1] at 17.  Ms. Flaherty, acting contrary to USPS' established protocol, directed Plaintiff to leave the building to deliver mail, while directing Mr. Fowler to go to an office within the building.  *Id.*  Plaintiff asserts that Mr. Mayo should have handled the incident because Mr. Mayo was Plaintiff and Mr. Fowler's direct supervisor.  *Id.* at 18.  Plaintiff also asserts that Ms. Flaherty should not have directed Plaintiff to leave the building, and believes that she did so in order to make it appear to the police that Plaintiff "fled the scene."  *Id.*  Because Plaintiff was suspicious of Ms. Flaherty's

instructions, Plaintiff called the Aurora police, who ordered him to return to the postal station.  *Id.*  Plaintiff complied.  *Id.*  Both parties gave their statements to the police, and no charges were filed because Plaintiff and Mr. Fowler refused to prosecute.  *Police Report* [#83-1] at 42.

*Allegation 9*: Terminating Plaintiff based on incorrectly classifying him as AWOL when he was on previously approved sick, annual, or FMLA leave.  Ms. Jones and Ms. Delancy issued the first Notice of Removal on October 30, 2012, which charged Plaintiff with being AWOL.  *EEO Form* [#75-1] at 63; *Oct. 30, 2012 Notice of Removal* [#75-2] at 27.  The Notice of Removal states that Plaintiff incurred 728 hours of unscheduled absences between June 2, 2012, and August 11, 2012, and from August 20, 2012, to October 18, 2012. [#75-2] at 28.  The Notice of Removal summarized several letters sent to Plaintiff over a period of several months.   For example, Plaintiff was notified in a June 1, 2012 letter from Andy Weaver ("Weaver") that he had 72 hours to submit acceptable medical documentation to the "GMF Medical Unit," or he would be placed in AWOL status effective June 2, 2012.  *June 1, 2012 Letter* [#75-2] at 15-16.  The letter also advised Plaintiff that his FMLA leave had been exhausted on March 9, 2012.  *Id.*  Plaintiff responded on June 6, 2012, that he believed that he had already provided the proper documentation to the proper place, but would fax the documentation once more.  [#75-2] at 17.  Mr. Mayo sent a letter on June 14, 2012, stating that the GMF Medical Unit had not received acceptable documentation covering Plaintiff's absences from March 20, 2012, to the date of the letter and he was therefore in AWOL status. [#75-2] at 18.  He was also set for an investigative interview.  *Id.*  Plaintiff responded with a letter dated June 18, 2012, stating that he believed that Mr. Mayo's representation that the GMF Medical Unit had not received his

documentation was false and that he would not attend the "bogus baseless investigative interview." [#75-2] at 21. Further letters were exchanged advising Plaintiff that his FMLA leave had expired, that he was required to use the ERMS system[6] to request leave, and scheduling him for investigative interviews. *Oct. 30, 2012 Notice of Removal* [#75-2] at 27-32.

Ms. Jones issued a letter to Plaintiff dated October 1, 2012, asking Plaintiff to provide documentation of his status, instructing him to report for an investigative interview on October 5, 2012, and warning that failure to follow the instructions might result in disciplinary actions including removal. *Oct. 30, 2012 Notice of Removal* [#75-2] at 30. Plaintiff responded by letter on October 3, 2012, stating that he would not be attending the "bogus interview on October 5, 2012," and Ms. Jones issued the Notice of Removal October 30, 2012. *Id.* at 72-73. Plaintiff filed a grievance and a settlement was reached, giving Plaintiff a seven-day suspension in lieu of removal. *See Pre-Arb. Settlement* [#75-2] at 26.

The second Notice of Removal was issued on August 22, 2013,[7] by management officials Ms. Jones and Anthony Kidd. *Ms. Jones' EEO Supp.* [#75-2] at 79; *August 22, 2013 Notice of Removal* [#75-2] at 33. Ms. Jones represents that Plaintiff's employment was terminated "due to his failure to have regular attendance; he was AWOL." *Ms. Jones' EEO Supp.* [#75-2] at 79 The Notice of Removal states that Plaintiff incurred 448 hours of

---

[6] Employees call in to the ERMS system to request approval of leave. *Plaintiff's Depo.* [#75-2] at 116.

[7] Ms. Jones' EEO Supplement mistakenly says that the second Notice of Removal was issued on August 26, 2013, but the document itself reflects that it was issued on August 22, 2013. *August 22, 2013 Notice of Removal* [#75-2] at 33.

unscheduled absences between May 28, 2013, and August 9, 2013. *August 22, 2013 Notice of Removal* [#75-2] at 33.

Defendant seeks entry of summary judgment in her favor on each aspect of Plaintiff's claims, on the grounds that the above allegations either do not constitute adverse employment actions, do not give rise to an inference of discrimination, or that Defendant's reasons for taking such actions were non-discriminatory. *See Motion* [#75] at 7.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,

1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment.  Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>> ...
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III.  Analysis

In the present Motion [#75], Defendant argues that she is entitled to summary judgment on Plaintiff's Title VII discrimination and retaliation claims.  Title VII prohibits an employer from engaging in certain behavior, including discriminating against any individual "because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000(e)-2(a).  Title VII also forbids an employer from retaliating against an individual

because the individual "has opposed any practice made an unlawful employment practice" by Title VII, ;(42 U.S.C. § 2000(e)-3(a) (retaliation). A plaintiff may prove discrimination and retaliation by either direct or circumstantial evidence. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004). Direct evidence demonstrates on its face that employment termination was either discriminatory or retaliatory. *Adamson*, 514 F.3d at 1145. In contrast, circumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination or retaliation that discrimination or retaliation has, in fact, occurred. *Anderson*, 122 F. App'x at 916.

Because Plaintiff does not provide direct evidence of discrimination or retaliation, and because the Court's review of the record reveals none, Plaintiff's Title VII claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *Id.* If the plaintiff meets this initial burden, the defendant must then offer a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant offers a legitimate, non-discriminatory reason for its employment action, the plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. *Id.*

## A.    Discrimination Pursuant to Title VII

To make a prima facie case of discrimination, a plaintiff must establish that he (1) belongs to a protected class, (2) was satisfactorily performing his job, and (3) suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir.1998);

*Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Defendant does not dispute that Plaintiff belongs to a protected class, but she does dispute Plaintiff's contention that he suffered adverse employment actions and that the adverse actions occurred under circumstances giving rise to an inference of discrimination. *See Motion* [#75] at 7. She also argues that USPS' reasons for the adverse actions were not pretextual. *Id.*

### 1. Adverse Employment Actions

"An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bejar v. McDonald*, 601 F. App'x 628, 631 (10th Cir. 2015) (quoting *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation marks omitted)). Although "an adverse employment action is not limited to such acts . . . we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Bejar*, 601 F. App'x at 631-32 (quoting *Dick*, 397 F.3d at 1268). ". . . [A] plaintiff must [always] show that the alleged adverse action caused more than de minimis harm to or a de minimis impact upon an employee's job opportunities or status." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). "Acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions . . . ." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004).

With respect to Allegation 1, Plaintiff alleges that Ms. Flaherty encouraged Mr. Mayo to write and give her a false statement stating that Plaintiff was trying to incite other African American mail carriers to ignore Ms. Flaherty's instructions. The note states: "Renee asked

[Plaintiff] if he called in, [Plaintiff] said something like hell no, that's her little plan gone wrong again. Words not exact, could not hear that well. So can not use as evidence." *Note* [#75-2] at 9. Plaintiff testified in his deposition that the consequence of Ms. Flaherty receiving the note was that she was angry. *Plaintiff's Depo.* [#75-2] at 101. Plaintiff testified that "[t]he situation got worse with her antics, coming after me, trying to set me up in certain situations, fabricating stories. She had some issues with statements that she had made to try to discredit me, get me in trouble." *Id.* at 101-02. The facts surrounding the note are rather unclear because Plaintiff stated that he was not sure who wrote it, or who ultimately gave the note to Ms. Flaherty. *Id.* at 98-99. Although Plaintiff addresses the background and meaning of the note with more certainty in the Response [#83], the task before the Court at this juncture is to determine whether there is a genuine issue of material fact, and Plaintiff has not directed the Court to any other proof of the circumstances surrounding the note. Even taking the evidence in the light most favorable to Plaintiff, neither the writing of the note, Ms. Flaherty's alleged solicitation of the note, nor the contents of the note – particularly because the note was thrown away and not relied on in any manner – amounts to "a significant change in employment status" causing more than de minimis harm to Plaintiff. *See Bejar*, 601 F. App'x at 631.

With respect to Allegations 2 and 3, Plaintiff alleges that he was given improper instructions for the purpose of causing him to be subject to discipline, and on the same day was improperly observed on his mail route. Plaintiff has not provided any evidence that he was actually subjected to discipline for following the alleged improper instructions, that he was disciplined following the alleged improper observations, or that any other change in employment status occurred. *See Bejar*, 601 F. App'x at 631-32 ("[W]e will not consider

a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.").

With respect to Allegation 4, Plaintiff alleges that Ms. Flaherty issued an Official Disciplinary Letter of Warning on October 15, 2010, stating that Plaintiff parked in a no-parking zone (a fire lane) on September 16, 2010, was warned not to park there, and nevertheless parked in the fire lane again on September 17, 2010. *Warning Letter* [#75-1] at 51-52. Plaintiff stated that he and other letter carriers had always parked there. The Warning Letter was removed from Plaintiff's personnel file after favorable resolution of his union grievance. *Decision of Dispute Resolution Team* [#75-1] at 56.

"Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action." *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996)). "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment-for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Id.*

Thus, the Court turns to whether there are genuine issues of material fact regarding whether the Warning Letter adversely affected the terms and conditions of Plaintiff's employment. *See id.* Plaintiff does not argue or cite to any evidence in the record indicating that the Warning Letter itself affected the terms of his employment, including by increasing the likelihood that he would be terminated. The record is simply devoid of any evidence that the Letter had an adverse effect on Plaintiff's employment. Additionally, the

Letter was ordered removed from Plaintiff's personnel file after resolution of his union grievance. *Decision of Dispute Resolution Team* [#75-1] at 56. Accordingly, even taking the evidence in a light most favorable to Plaintiff, he suffered no repercussions from the Warning Letter. Therefore, the Court cannot find that this incident constitutes a material adverse action. *See also Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1997) (stating that informal warnings or reprimands require "evidence that they had some impact on the employee's employment status"); *see also Winston v. Pritzker*, No. 15-CV-37-ABJ, 2017 WL 5202882, at *10 (D. Wyo. Apr. 21, 2017) (finding no material adverse action where plaintiff did not provide evidence that warning letter affected terms or conditions of employment and letter was later removed from personnel file).

With respect to Allegation 5, Plaintiff alleges that Ms. Flaherty told another mail carrier, Darryl Carter ("Carter"), that he and Plaintiff should "fight it out" regarding assigned overtime routes. Ms. Flaherty, in her sworn Declaration, states that she meant for them to work it out among themselves. *Flaherty Decl.* [#75-3] at 21 ¶ 9. She further noted that both Plaintiff and the other mail carrier got the overtime they requested, and Plaintiff does not provide any evidence disputing that fact. *See id.* Plaintiff cites to his Exhibits 19-21, *see* [#83-1] 25-27, which consist of USPS' Zero Tolerance Policy Statement and signed statements from Mr. Carter and another employee, who were witnesses to Ms. Flaherty's statement. Both written statements affirm that Ms. Flaherty told Mr. Carter and Plaintiff to "fight it out," although Mr. Carter states that he believes Ms. Flaherty did not mean to cause harm and the other witness did not comment on the meaning of "fight it out," but affirms that both Mr. Carter and Plaintiff were given overtime. *Id.* Even construing the evidence in a light most favorable to Plaintiff, simply telling people to "fight it out" – even if the statement

-15-

somehow violates company policy – does not constitute a change in employment status or other circumstance constituting a material adverse action.  *See Bejar*, 601 F. App'x at 631.

With respect to Allegation 6, Plaintiff alleges that Mr. Mayo and Ms. Flaherty hid Plaintiff's mail scanner in order to cause Plaintiff to not be able to perform his job properly and threaten him that he would need to reimburse USPS for the missing scanner. However, Plaintiff was able to use another carrier's scanner, was not formally disciplined, and did not have to pay for the missing scanner.[8]  It is worth noting that aside the Plaintiff's conclusory allegations, there is no evidence that Mr. Mayo or Ms. Flaherty engaged in the childish behavior he attributes to them.  Moreover, the evidence does not demonstrate that Plaintiff suffered a material adverse action with respect to the mail scanner.  *See Bejar*, 601 F. App'x at 631.

With respect to Allegation 7, Plaintiff alleges that Ms. Flaherty refused to fill out parts of Plaintiff's FMLA forms, which caused a delay in processing of his leave requests. It is undisputed that Plaintiff eventually received the FMLA-protected leave that he requested in February and March 2011.  *Plaintiff's Amendment to Depo.* [#75-3] at 3.  Even if Plaintiff's allegations are true regarding the delay in the processing of his paperwork, the allegation fails as a matter of law because a delay in the processing of FMLA paperwork does not constitute an adverse employment action.  *See Bejar*, 601 F. App'x at 631;

_____

[8]  The Court notes that Plaintiff's deposition testimony states that he may have been given an "official discussion" pertaining to misplacing scanners, which is part of what Plaintiff referred to as "progressive discipline." *Plaintiff's Depo.* [#75-2] at 31-32.  Regardless, Plaintiff has not directed the Court to any evidence that the "official discussion" gave rise to a significant change in his employment status such that it would be considered a material adverse action.  *See Bejar*, 601 F. App'x at 631.

*Steckmyer-Stapp v. PetSmart, Inc.*, No. 15-cv-00025-RM-STV, 2016 WL 6962874, at *5 (D. Colo. Nov. 29, 2016) (finding no adverse employment action despite delay of the plaintiff's FMLA medical certification submission, because she ultimately received the leave requested); *also compare Simmons v. Potter*, No. 08-cv-02593-WYD-KLM, 2010 WL 3002038, at *9 (D. Colo. July 29, 2010) (finding that brief delays in pay are not "adverse employment actions").

With respect to Allegation 8, Plaintiff asserts that Ms. Flaherty did not follow the proper procedure when handling the September 2, 2011 physical altercation between Plaintiff and Mr. Fowler. *Response* [#83] at 24-27. However, even if Ms. Flaherty had intended to send Plaintiff away in order to cause problems for him with the police, Plaintiff took the initiative to call the police himself and to follow their orders. *Plaintiff's Interrogatory Responses* [#75-1] at 17. Plaintiff gave his statement to the police, and ultimately no charges against either party were filed. *Police Report* [#83-1] at 42. Accordingly, it does not appear that Plaintiff suffered any adverse employment consequences as a result of the altercation.[9] Plaintiff has not cited to, nor is the Court aware of, any legal authority supporting his position that such circumstances constitute an adverse employment action. Thus, Plaintiff has not created a genuine issue of material fact regarding whether this incident resulted in any significant changes to Plaintiff's employment status akin to hiring,

---

[9] The Court notes that Mr. Fowler obtained a Temporary Civil Protection Order against Plaintiff on September 7, 2011, which ordered that Plaintiff "keep a distance of at least 100 yards" from "738 Peoria St. D," which appears to be the address of the Postal Service office where Plaintiff worked. *Protection Order* [#83-1] at 52. Although Plaintiff alleges that Mr. Fowler was instructed to do so "by management," there is no evidence in the record supporting this conclusory statement. The Protection Order was set to expire on September 21, 2011, at which point Plaintiff was already on leave. Moreover, there is no evidence that Plaintiff attempted and was prevented from working during the 14-day time period when the protective order remained in effect. Accordingly, no adverse employment action resulted. *See Bejar*, 601 F. App'x at 631.

firing, or changing Plaintiff's benefits.  *See Bejar*, 601 F. App'x 631.

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact concerning whether Allegations 1, 2, 3, 4, 5, 6, 7, and 8 constitute adverse employment actions for the purposes of a Title VII discrimination claim, and the Court respectfully **recommends** that judgment enter in Defendant's favor accordingly.

### 2.    Pretext for Discrimination

In Allegation 9, Plaintiff asserts that he was discriminated against on the basis of race, supported by the fact that Defendant issued two notices of removal when Plaintiff allegedly was on approved FMLA, sick, or annual leave.  *See Response* [#83] at 9-15. Defendant does not dispute that the issuance of notices of removal constitute adverse employment actions, but rather argues that the circumstances did not give rise to an inference of discrimination, and alternatively, that there was no pretext for discrimination. *See Daniels*, 701 F.3d at 628.   Specifically, Defendant argues that Ms. Jones, the management official who issued both notices of removal, "had never seen Plaintiff during her years of supervising at the Hoffman Heights postal station, and [Ms.] Jones was not aware of any evidence that Plaintiff was on approved leave."  *Motion* [#75] at 9.

Although Plaintiff does not assert any FMLA claims, whether Plaintiff was in fact on approved leave sheds light on whether Defendant's proffered explanation for termination of his employment was a pretext for discrimination.   Although employers must allow employees up to twelve weeks of FMLA-approved leave in a year, "taking FMLA leave does not insulate an employee from being fired for other reasons."  *Dry v. The Boeing Co.*, 92 F. App'x 675, 677-78 (10th Cir. 2004) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d

1253, 1262 (10th Cir. 1998)). "[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, even if the absences that the employee failed to report were protected by the FMLA." *Branham v. Delta Airlines*, 678 F. App'x 702, 705 (10th Cir. 2017) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011)).

For the purposes of the Motion [#75], the Court assumes without deciding that Plaintiff has proven a prima facie case with respect to both notices of removal. Thus, the Court will consider whether Defendant's proffered reasons for issuance of the notices of removal are pretextual. *See McDonnell Douglas*, 411 U.S. at 802-04.

### a. October 30, 2012 Notice of Removal[10]

The October 30, 2012 Notice of Removal charged Plaintiff with being AWOL, due to 728 hours of unscheduled absences between June 2, 2012, and August 11, 2012, and from August 20, 2012, to October 18, 2012. *Oct. 30, 2012 Notice of Removal* [#75-2] at 28. The Notice of Removal summarized several letters sent to Plaintiff that had advised him that he had exhausted his FMLA leave several months prior and had failed to provide acceptable documentation to support his continued leave, that he was required to request leave through the ERMS system for all absences, and that he was ordered to report for investigative interviews on June 20, 2012, July 13, 2012, and October 5, 2012. *Id.* at 27-

---

[10] The record demonstrates that the October 30, 2012 Notice of Removal was reduced to a seven-day suspension as a result of a pre-arbitration settlement reached on April 2, 2013, through the union grievance process. *See Pre-Arb. Settlement* [#75-2] at 26. Plaintiff was required to supply updated medical documentation to management within 30 days of that date. *Id.* Plaintiff raises a side argument that the October 30, 2012 Notice of Removal "was settled without the plaintiff's consent." *Response* [#83] at 13. Plaintiff directs the Court to nothing in the record supporting his statement, nor is it clear how that fact would help his case, as it would merely signify that Plaintiff should have been terminated earlier than he was.

32.  The Notice also recounted Plaintiff's responses to those letters, which affirmed that he received the letters and did not comply with the instructions to provide updated medical information, request leave through the ERMS system, or report for the investigative interviews. *Id.*

First, Plaintiff argues that his absences were all covered by FMLA, sick, or annual leave.  The Court first notes that Plaintiff has not directed the Court to any evidence supporting his contention that he was on sick or annual leave for any period of time. Plaintiff also asserts in the Response [#83] that employees may, in lieu of calling in absences, fill out a leave slip upon their return to work. *Response* [#83] at 13.  However, Plaintiff provides no citation to any evidence in support of that statement either.

Second, Plaintiff asserts that he was not required to request leave through the ERMS system after June 1, 2012, because of a July 11, 2012 letter from Andy Weaver stating that Plaintiff was "approved FMLA through July 22, 2012," and a December 10, 2012 letter from the Postal Services Human Resource Shared Services Center ("HRSSC"). *See Response* [#83] at 10 (citing [#83] at 68, [#83] at 69).  However, the December 10, 2012 letter states that Plaintiff did not need to obtain an updated FMLA certification until notified by the HRSSC; it does *not* state that Plaintiff did not have to follow the procedures for requesting particular days off. *December 10, 2012 Letter* [#83] at 68.  Furthermore, the July 11, 2012 letter reminded Plaintiff that "all absences must be requested through the ERMS system," and that he had "been in a continuous [AWOL] status since June 2, 2012" due to his failure to do so. *July 11, 2012 Letter* [#83] at 69.  The letter itself contradicts Plaintiff's position that he was led to believe that he did not need to request leave.

Additionally, the Employee and Labor Relations Manual ("ELM"), which provides the

USPS policies with respect to the FMLA, states that "employees are required to call in their unscheduled absences" when the phone system is operational, and report absences to their supervisor when it is not. *ELM* [#75-2] at 37-39. The ELM further states that "FMLA protection may be delayed or denied" when an employee fails to provide timely notice of the need for FMLA-protected leave. *Id.* at 38. In response, Plaintiff cites to the May 4, 2000 version of the ELM. *May 4, 2000 ELM* [#83] at 67. First, Defendant argues that the older version of the ELM Plaintiff cites to does not apply to Plaintiff's conduct that occurred in 2011-2013. *Reply* [#84] at 2. Whether or not that is true, even the 2000 version of the ELM does not support Plaintiff's contention that he was not required to request FMLA leave. On the page that Plaintiff provided, section 515.51 states that "notice must be given as soon as practicable" if the need for leave is not foreseeable. The ELM further clarifies, "Ordinarily at least verbal notification should be given within 1 or 2 business days of when the need for leave becomes known to the employee." *Id.* Here, Plaintiff did not provide *any* notice – whether by calling in or otherwise – of his absences at any time after June 1, 2011.[11] Plaintiff has not created a genuine issue of material fact, as he has not provided evidence disputing Defendant's position that Plaintiff was required to notify USPS of his absences, and that he did not do so. *See Anderson*, 477 U.S. at 248.

Plaintiff also argues that the 2000 version of the ELM does not provide that he was required to "submit medical documentation" to the HRSSC. Section 515.51 of that version states:

---

[11] Plaintiff also argues that employees may fill out a leave slip (Form 3971) in lieu of calling in. *Response* [#83] at 13. However, Plaintiff has not directed the Court to any evidence that he provided notice of his absences by filling out leave slips.

Additional documentation may be requested, which must be provided within 15 days or as soon as practicable under the particular facts and circumstances. During an absence, the employee must keep his or her supervisor informed of intentions to return to work and of status changes that could affect his or her ability to return to work. Failure to provide documentation can result in the denial of family and medical leave under this section.

*Id.* Thus, even the version of the ELM provided by Plaintiff states that he may be required to provide additional documentation, and that the failure to do so could result in the denial of leave.[12] Lastly, Plaintiff argues that he was told by "Diana from the Department of Wage and Labor Division" that his "FML" was tolled until management correctly coded Plaintiff's leave. *Response* [#83] at 10. First, this type of hearsay statement does not suffice to create a genuine issue of material fact. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201-02 (10th Cir. 2015) (observing that inadmissible hearsay statements cannot defeat summary judgment and that "conclusory and self-serving affidavits" carry no weight (internal quotation marks omitted)). Additionally, the citation to the record that Plaintiff provides does not support that argument. *Id.* He cites to "plaintiff's amended deposition 46:18," where Plaintiff wrote that he "was on family medical leave and sick leave concurrently." [#75-3] at 5. While this statement supports that Plaintiff believed that he was on approved leave, it does not support his assertion that he was told by proper authorities that he did not need to provide notice of any absences.

The series of letters between USPS and Plaintiff demonstrate that Plaintiff repeatedly ignored or directly refused to comply with USPS' instructions with respect to his leave, which were the grounds on which the October 30, 2012 Notice of Removal was

---

[12] Section 515.52 of the ELM version provided by Defendant contains similar rules. *ELM* [#75-2] at 38.

issued.  *See Oct. 30, 2012 Notice of Removal* [#75-2] at 27-32.  Plaintiff argues that Ms.

Jones "falsified 29 leave slips . . . to cover for Ms. Flaherty who initiated the bogus claim

that [P]laintiff was AWOL."  *Response* [#83] at 9.  First, the Court notes that even if it is true

that the employee normally signs his or her leave slips, the very nature of being AWOL

indicates that an employee is not present to sign the slips.  Second, Plaintiff does not direct

the Court to any evidence supporting his contention that the slips were "falsified."  *See*

*Response* [#83] at 9, 13.  Third, Plaintiff does not explain why Ms. Jones' alleged

misconduct should benefit him.  Fourth, and mostly importantly, Plaintiff does not dispute

the fact of his extended absence or his failure to follow the various orders he received.

Accordingly, even if Plaintiff had presented any evidence that the leave slips were

somehow "falsified," this fact is not material to his claim.  Beyond Plaintiff's subjective belief

that his race was a factor in Ms. Jones' decision to issue the October 30, 2012 Notice of

Removal, there is no evidentiary support for that belief.  The Notice of Removal was also

signed by Ms. Delancy, the concurring official, and there is similarly no evidence regarding

discrimination on her part.  *See Oct. 30, 2012 Notice of Removal* [#75-2] at 27-32.  Thus,

Plaintiff has not created a genuine issue of material fact regarding whether Defendant's

reasons for issuing the Notice of Removal were pretextual.  *See McDonnell Douglas*, 411

U.S. at 802-04.

Lastly, showing that similarly situated employees who do not belong to the protected

class were treated differently with regard to violation of work rules could create a genuine

issue with respect to the pretext argument.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324

(10th Cir. 1997).  However, Plaintiff has not provided evidence that any other employee had

a similar record of being absent without notifying USPS and failing to follow orders.

Thus, there is no genuine dispute that the issuance of the October 30, 2012 Notice of Removal was based on Ms. Jones' belief that Plaintiff failed to notify Defendant of his absences, failed to provide medical documentation, and failed to appear for investigative interviews. Given the reasonable, non-discriminatory basis for issuance of the Notice, there is no genuine issue of material fact with respect to whether Defendant's actions were pretextual. *See Gunnell*, 152 F.3d at 1262 (stating that "taking FMLA leave does not insulate an employee from being fired for other reasons"); *McDonnell Douglas*, 411 U.S. at 802-04.

### b. August 22, 2013 Notice of Removal

The August 22, 2013 Notice of Removal notified Plaintiff that he had incurred 448 hours of unscheduled absences from May 28, 2013, to August 9, 2013, due to his failure to provide updated acceptable medical documentation to management pursuant to the April 2, 2013 Pre-Arbitration Settlement. *Aug. 22, 2013 Notice of Removal* [#75-2] at 33. The Notice further stated that Plaintiff failed to comply with several letters reminding him to provide the medical documentation, and a letter instructing him to appear for an investigative interview. *Id.* at 34-35. The Notice stated that Plaintiff failed to follow those instructions and therefore violated policies relating to unscheduled absences and non-compliance with orders. *Id.* at 35.

Plaintiff plainly argues that he should have been designated as Leave Without Pay status rather than AWOL from May 28, 2013, to August 9, 2013. *Response* [#83] at 14. However, he provides no citation to the record in support of his argument. *See id.* He also argues that he was told by the HRSSC that he did not need to provide updated information for FMLA certification until further notification. *Response* [#83] at 15. That argument is

inapposite because the issue here is not that Plaintiff failed to provide information to HRSSC with respect to his FMLA certification; the problem is that Plaintiff did not provide updated medical documentation to USPS management, and that he did not appear for an investigative interview.

Furthermore, as discussed above, Plaintiff has not provided evidence that any other employee who had a similar record of absences without notifying USPS and a similar record of failure to follow orders received more favorable treatment. *See Morgan*, 108 F.3d at 1324.

Thus, where there is no genuine dispute that Defendant issued the August 22, 2013 Notice of Removal based on Plaintiff's failure to comply with USPS instructions with respect to provision of medical documentation and reporting for an investigative interview, the Court cannot conclude that Defendant's proffered reasons for the termination were pretextual. *See Branham*, 678 F. App'x at 705. Accordingly, the Court respectfully **recommends** that summary judgment be entered in Defendant's favor on this aspect of Plaintiff's discrimination claim.

**B.    Retaliation Pursuant to Title VII**

Plaintiff appears to argue that his retaliation claim stems from the following actions taken by Ms. Flaherty: (1) playing "hide and seek" with Plaintiff's mail scanner in December 2010, (2) refusing to properly process Plaintiff's FMLA request, (3) calling the police in an attempt to have Plaintiff arrested, and (4) "falsifying the 4585 violation forms" in order to cause Plaintiff to be disciplined.[13] *Response* [#83] at 29. The Court addresses each in

---

[13]  Although Plaintiff discussed other allegations relating to retaliation in his response to Defendant's interrogatories, his Response states that the "evidence . . . demonstrating retaliatory

turn.[14]

To establish a prima facie case of retaliation pursuant to Title VII, a plaintiff must show that "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between [his] opposition and the employer's adverse action." *Durant v. MillerCoors, LLC*, 415 F. App'x 927, 932 (10th Cir. 2011) (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)). Defendant argues that Plaintiff has failed to show material adverse actions, a causal connection, and pretext with respect to the majority of the allegations. *Motion* [#75] at 25-29; *Reply* [#84] at 9-10.

The Court first considers whether the alleged retaliatory conduct constitutes adverse employment actions. The requirement of an adverse employment action in a retaliation claim differs from the disparate treatment context. The terms, conditions, or status of employment do not need to be affected for there to be a material adverse action in a retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-67 (2006). Rather, to establish the second element of a retaliation claim, an employer takes a materially adverse action if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014) (quoting *Burlington*, 548 U.S. at 68). "[T]he fact that an employee continues to be undeterred in . . . [his] pursuit of a remedy . . . may

---

motive" solely consists of these four allegations. *Response* [#83] at 29. Thus, the Court considers these four alleged retaliatory actions.

[14] Plaintiff also states that "[t]he litany of discrimination and retaliatory actions by the Agency's supervisors . . . clearly demonstrates the existence of such on-going antagonism . . . ." *Response* [#83] at 29. This vague statement is not supported by any citations to the record.

shed light as to whether the actions are sufficiently material and adverse to be actionable." *Id.* (quoting *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008)). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington*, 548 U.S. at 68. A plaintiff must assert "material adversity" in order to "separate significant from trivial harms." *Id.*

Here, it is apparent from the record that Plaintiff continued to be undeterred in pursuing his legal remedies. Specifically, it is undisputed that he filed formal complaints with the EEO on the following dates: January 7, 2010; July 15, 2011; February 6, 2013; and October 5, 2013. *See Information for Pre-Complaint Counseling* [#75-2] at 40, 41, 47. While the fact that Plaintiff has apparently not been deterred by Ms. Flaherty's alleged retaliatory actions is instructive, the Court nevertheless must consider whether a reasonable employee would have been deterred from making or exhausting such charges of discrimination. *See Kenfield*, 557 F. App'x at 733.

With respect to Plaintiff's allegations regarding the mail scanner (Allegation 6), Plaintiff has not shown that this conduct constituted a material adverse action. Plaintiff has not cited to any legal authority, nor is the Court aware of any, indicating that such an action should be classified as more than a petty slight or minor annoyance. *See Burlington*, 548 U.S. at 68. Nor does Plaintiff's allegation that Ms. Flaherty delayed his February and March 2011 FMLA requests (Allegation 7) constitute an adverse action for retaliation purposes. *See Glapion v. Castro*, No. 14-cv-01699-MEH, 2015 WL 7253331, at *34 (D. Colo. Nov. 16, 2015) (finding no material adverse action in retaliation claim where FMLA request was initially denied, but later approved).

With respect to Plaintiff's allegation that Ms. Flaherty failed to follow certain policies

regarding her handling of the September 2, 2011 incident (Allegation 8), Plaintiff argues that calling the police was an adverse action. However, there is no evidence that the police were called solely to investigate and/or charge Plaintiff, as both people involved (Plaintiff and his co-worker) were interviewed by the police and ultimately no charges were filed against either. Moreover, Plaintiff readily admits that he called the police himself regarding the incident, thus communication with authorities can hardly be characterized as retaliatory. *See, e.g.*, *Response* [#83] at 25. Therefore, this allegation does not amount to more than a trivial harm or minor annoyance that would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington*, 548 U.S. at 68.

Lastly, Plaintiff does not clarify what the "4584 violation forms" are, or how they were allegedly falsified by Ms. Flaherty. *See Response* [#83] at 29. However, this statement appears to be related to Allegations 3 and 4. Based on the October 15, 2010 Official Disciplinary Letter of Warning, it appears that 4584 forms direct that an employee be subjected to "driving observations." *Warning Letter* [#75-2] at 7. While the simple fact that Plaintiff was observed on his route (Allegation 3) does not appear to be an adverse action, Plaintiff thereafter received the Warning Letter (Allegation 4) as a result of such observations, which a reasonable employee could find to be adverse. *See Durant*, 415 F. App'x at 932. However, the letter was ordered removed from Plaintiff's personnel file after resolution of his union grievance. *Decision of Dispute Resolution Team* [#75-1] at 56. Therefore, as discussed above, the Court finds that a reasonable juror could not find that the Warning Letter was more than a minor annoyance. *See Burlington*, 548 U.S. at 68; *Winston*, 2017 WL 5202882, at *10 (finding no material adverse action in retaliation claim where letter was eventually removed from personnel file and there was no other evidence

of adverse effects on employment, reputation, future employment prospects, etc.).

The Court finds that there is no genuine issue of material fact regarding Plaintiff's retaliation claim based on these allegations. *See McDonnell Douglas*, 411 U.S. at 802-04. Accordingly, the Court respectfully **recommends** that judgment enter in Defendant's favor in this respect.

## C.    Hostile Work Environment Claim

Plaintiff states in the Response [#83] that he "would like to add" a hostile work environment claim. However, the Amended Complaint [#20] makes no mention of a hostile work environment claim. *See Azim v. Tortoise Capital Advisors, LLC*, No. 16-3235, 2017 WL 6508978, at *4 (10th Cir. Nov. 24, 2017) (stating that a court may not assume the role of advocate for pro se litigants and that it is the litigant's responsibility to state his claims). Additionally, Plaintiff has not followed the proper Court procedure by filing a motion to amend his pleadings, *see* D.C.COLO.LCivR 15.1(b) (providing that motions for leave to amend a pleading shall attach a copy of the proposed amended pleading), and the time to do so has long since elapsed. *See Sched. Order* [#30] at 9. Thus, the Court does not consider any hostile work environment claim.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#75] be **GRANTED**, and that judgment enter in Defendant's favor on all claims in this matter.

IT IS FURTHER **RECOMMENDED** that, to the extent that Plaintiff seeks entry of summary judgment in his favor within the Response [#83], his request be **DENIED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 27, 2018        BY THE COURT:

Kristen L. Mix
United States Magistrate Judge